UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROGER THOMAS ALTICE,

    Plaintiff,

v.                                                  CASE NO. 3:17-cv-497-J-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____/

## **MEMORANDUM OPINION AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his application for Supplemental Security Income ("SSI"), alleging disability beginning January 1, 1998. (Tr. 162.) Following an administrative hearing held on March 30, 2016, the assigned Administrative Law Judge ("ALJ") issued a decision on April 29, 2016, finding Plaintiff not disabled since January 31, 2014, the date the application was filed. (Tr. 15-83.) Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **REVERSED and REMANDED**.

**I.    Standard of Review**

The scope of this Court's review is limited to determining whether the

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 14.)

1

Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

Plaintiff raises two issues on appeal. First, Plaintiff argues that the ALJ erred by failing to properly evaluate his intellectual disability under Listing 12.05(C) of the Listing of Impairments in the Social Security Regulations. Plaintiff explains that the ALJ failed to acknowledge that he has documented intelligence

2

quotient ("IQ") test scores that meet the first requirement of Listing 12.05(C). Plaintiff also points out that his autism, which the ALJ found to be a severe impairment, meets the second requirement of the listing. Plaintiff further contends that the ALJ failed to acknowledge or discuss the third requirement of Listing 12.05(C), namely, Plaintiff's deficits of adaptive functioning prior to age 22.[2] Plaintiff's second argument is that the ALJ erred by failing to properly weigh the opinion evidence, including the opinions of Richard Nay, Ph.D., the vocational assessment by vocational evaluator Richard Grissinger, M.S., C.V.E., and the lay opinions of Ronn Cummings. The Court finds that a remand is required as to the first issue and, therefore, does not address the second issue.

### A. Standard for Evaluating Evidence of Intellectual Disability under Listing 12.05(C)

Listing 12.05 provides in relevant part:

Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

---

[2] Plaintiff also states:
Even if the ALJ's errors as described above could somehow be excused, the ALJ also provided none of the required analysis related to whether Plaintiff's intellectual disability could be said to 'equal' the requirements of Listing 12.05C, compounding the error described above. . . . The ALJ's inadequate analysis with respect to whether Plaintiff met the requirements of Listing 12.05C naturally extends to his altogether absent consideration of whether his intellectual disability could be said to equal this listing, and is [an] error precluding meaningful judicial review for all the same reasons set forth above.
(Doc. 16 at 11 n.2.)

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Thus, for an impairment to meet the requirements of Listing 12.05(C), there must be deficits in adaptive functioning initially manifested prior to age 22, as well as both an IQ score in the range of 60 to 70 and a physical or other mental impairment. *Id.*

In 2001, the Eleventh Circuit held "there is a presumption that [intellectual disability] is a condition that remains constant throughout life." *Hodges v. Barnhart*, 276 F.3d 1265, 1266 (11th Cir. 2001). Because of this presumption, a plaintiff who demonstrates valid IQ scores after the age of 22 in the range provided for in Listing 12.05 does not need to show evidence that deficits in adaptive functioning manifested before age 22. *Id.* Instead, valid low IQ scores after the age of 22 create a presumption that the plaintiff had deficits in adaptive functioning manifested prior to age 22. *Id.* at 1269.

Even if a plaintiff demonstrates low IQ scores, however, the Commissioner may rebut the presumption of mental impairment before age 22 by presenting evidence of Plaintiff's daily life. *Id.* "[A] valid [IQ] score need not be conclusive of [intellectual disability] where the [IQ] score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." *Lowery*, 979 F.2d at

4

837. As the Eleventh Circuit explained in *Popp v. Heckler*:

> [The intellectual disability listing] does not require the Secretary to make a finding of [intellectual disability] based on the results of an IQ test alone. *See Strunk v. Heckler*, 732 F.2d 1357, 1360 (7th Cir. 1984) ("The plaintiff has failed to supply this court, nor have we found any case law requiring the Secretary to make a finding of [intellectual disability] based *solely* upon the results of a standardized intelligence test in its determination of mental retardation."). The listing requires the Secretary to take into account the intelligence test *and* the medical report. Moreover, the test results must be examined to assure consistency with daily activities and behavior. Thus, in the instant case, it was proper for the ALJ to examine the other evidence in the record in determining whether Popp was in fact [intellectually disabled].

779 F.2d 1497, 1499 (11th Cir. 1986) (per curiam) (emphasis in original). As the *Popp* court recognized, the Listing itself provides that an IQ score is not necessarily determinative of intellectual disability. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(a) ("The results of standardized intelligence tests may provide data that help verify the presence of intellectual disability or organic mental disorder, as well as the extent of any compromise in cognitive functioning. However, since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation.").

### B. The ALJ's Decision

At step two of the sequential evaluation process,[3] the ALJ found that Plaintiff had the following severe impairments: history of autism and history of borderline IQ. (Tr. 20.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ stated that Listing 12.05(C) was "not met because the claimant [did] not have a valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." (Tr. 21.)

Then, as part of the residual functional capacity ("RFC") determination, the ALJ stated that Plaintiff's "borderline intellectual functioning and history of autism [did] not meet or medically equal a listing and [did] not cause disabling symptoms." (Tr. 27.) The ALJ explained:

> The [ALJ] has carefully considered the claimant's psychological test results as reported by Dr. Davis. Dr. Davis stated that intelligence testing utilizing the Wechsler Adult Intelligence Scale indicated that the claimant had a full scale IQ of 71 (Exhibit 1F).
> The [ALJ] accepts that these scores probably show the claimant's current level of intellectual and academic functioning.
> However, they are not indicative of the claimant's long-term functioning. . . . His range of daily activities and his adaptive functioning, while in some respects limited, are still fairly appropriate for someone his age.

---

[3] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. § 416.920(a)(4).

(*Id.*)

As part of the RFC discussion, the ALJ stated that the State agency psychological consultant determined that Plaintiff's impairment did not meet a listing and that Plaintiff "was capable of functioning in a work setting that involves simple, routine and repetitive tasks and less than significant interaction with the general public and coworkers (Exhibit 4A)." (Tr. 28.) The ALJ gave this assessment "great weight as it [was] consistent with [t]he medical evidence of record and the claimant's current level of adaptive functioning according to his daily activities." (*Id.*) The ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations: "[T]he claimant could persist in a simple, rote and repetitive job that stayed the same each day and had no public contact and only occasional or less contact with co-workers or supervisors and had no production goals or quotas." (Tr. 22.)

### C. Analysis

The Court agrees with Plaintiff that the ALJ's failure to properly evaluate his intellectual disability under Listing 12.05(C) warrants a remand. As Plaintiff points out, the ALJ failed to acknowledge that he had "[a] valid verbal, performance, or full scale IQ of 60 through 70." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C). For example, during a psychological evaluation performed by Dr. Davis on June

7

1, 2013, Plaintiff's Perceptual Reasoning Composite Score was 63, placing him in the first percentile, in the extremely low range. (Tr. 243.) Also, in March 2003, on the Wechsler Intelligence Scale for Children – Third Edition (WISC–III), Plaintiff obtained a Full Scale IQ score of 67 and a Performance IQ score of 62, both of which placed him "within the mentally deficient range of intellectual functioning and at the 1st percentile for his age group." (Tr. 251, 256.) In addition, in June 2001, on the Stanford-Binet Intelligence Scale – Fourth Edition, Plaintiff obtained a Test Composite Score of 69, placing him "in the slow learner range." (Tr. 248-49.)[4]

The ALJ failed to acknowledge the existence of any of these scores, making it impossible for the Court to determine whether the scores were properly considered.[5] Because there was more than one IQ score, the ALJ was required to use the lowest of the available scores when evaluating Listing 12.05. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(c) ("In cases where more than

---

[4] In February 2016, Dr. Nay interpreted Plaintiff's scores as follows:
Despite overall cognitive functioning falling into the Average-Low Average range, it is important to note that attached medical records indicate clearly that Mr. Altice's level of intellectual functioning falls at the low end of the Borderline range, both during his childhood (Exhibit A) and as recently as 2013 (Exhibits B and C). This level of intellectual functioning is only slightly above that observed in individuals with a diagnosis of mental retardation.
(Tr. 321.)

[5] In fact, at step two, the ALJ stated, contrary to the evidence of record, that "the claimant does not have a valid verbal, performance or full scale IQ of 60 through 70." (Tr. 21.)

8

one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05."). There is no indication that the ALJ considered any of the IQ scores of 60 through 70, or that he used the lowest score in conjunction with Listing 12.05.

In addition, the ALJ improperly stated that Plaintiff did not have "a physical or other mental impairment imposing an additional and significant work-related limitation of function." (Tr. 21.) Plaintiff's additional "mental impairment imposing an additional and significant work-related limitation of function" was his autism, which the ALJ found to be a severe impairment under 20 C.F.R. § 416.920(c).[6] *See* 65 Fed. Reg. 50772 ("We always have intended the phrase to mean that the other impairment is a 'severe' impairment, as defined in §§ 404.1520(c) and

---

[6] Plaintiff was diagnosed with an autistic disorder, as evidenced by, *inter alia*, limited peer relationships, repetitive and stereotyped patterns of behavior, and a significant delay in spoken language. (Tr. 246; *see also* Tr. 248, 261.) In 2003, it was observed that Plaintiff's "behaviors [were] somewhat more severe than the average Asperger's child, in that he [was] functioning in the mentally deficient to borderline range of cognitive functioning." (Tr. 278.) In 2014, it was opined that while Plaintiff would "have gains in certain areas of social integration, he [would] not likely improve considerably in judgment, ability to advance occupationally, educationally, and self preservation." (Tr. 310 ("Quirky behaviors can cause uneasiness with co-workers, making employment a challenge for Roger."), 315 ("As is common with Roger and other individuals with Aspergers [sic], he will experience more difficulty remaining on-task in an actual job in which he would be required to manage his own time or work within time restraints.").) In 2016, it was opined that Plaintiff "continue[d] to meet [the] full diagnostic criteria for a diagnosis of Autism Spectrum Disorder, with his behavioral picture being consistent with a subtype of Autism known as Asperger's Syndrome." (Tr. 322; *see also* 323 ("Mr. Altice's impairments, particularly in social functioning, are consistent with his diagnosis of an Autism Spectrum Disorder . . . .").)

416.920(c)."). Since the ALJ determined that Plaintiff's autism was a severe impairment, it was sufficient to meet the second requirement of Listing 12.05(C). *See id.*

The final requirement under the listing is a showing of deficits in adaptive functioning initially manifested prior to age 22. Adaptive functioning "refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociological background, and community setting." DSM-IV-TR at 42; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(H)(3)(a) ("Adaptive functioning refers to how you learn and use conceptual, social, and practical skills in dealing with common life demands. It is your typical functioning at home and in the community, alone or among others."); POMS DI 24515.056(D)(2) (stating that adaptive functioning refers to an "individual's progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age"). Evidence about a claimant's adaptive functioning may come from medical sources, standardized tests of adaptive functioning, reports of third parties (*e.g.*, family members, friends, employers, or supervisors), school records, and a claimant's own statements about daily activities. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(H)(3)(b).

At step three of the sequential evaluation process, the ALJ failed to

expressly address whether Plaintiff had any deficits in adaptive functioning initially manifested prior to age 22.  (*See* Tr. 20-21.)  Defendant acknowledges that, but asserts that the ALJ "did go on to discuss adaptive functioning and Listing 12.05 again while discussing Plaintiff's RFC."  (Doc. 19 at 7.)  While the ALJ briefly mentioned Plaintiff's adaptive functioning as part of his RFC determination, he did so only after erroneously concluding at step three that Plaintiff did "not have a valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  (Tr. 21.)

The Court can only speculate whether the ALJ would have made the same findings as to Plaintiff's adaptive functioning, if he had considered Plaintiff's valid IQ scores of 60 through 70 and his additional mental impairment at step three.  In light of the ALJ's erroneous findings at step three, his scattered findings throughout the decision pertaining to the listing, and his acknowledgment that Plaintiff's daily activities and adaptive functioning were limited in some respects (Tr. 27), the Court cannot find that the presumption of intellectual disability created by Plaintiff's valid low IQ scores has been effectively rebutted, particularly since it appears that Plaintiff's valid IQ scores are supported by the evidence in the record.[7]

---

[7] For example, Dr. Nay opined, in relevant part: "[Plaintiff] continues to experience significant, severe deficits in all of the following areas of functioning: social
(continued...)

Therefore, this case will be remanded with instructions to the ALJ to re-evaluate Plaintiff's intellectual disability under Listing 12.05(C) and conduct any further proceedings deemed appropriate. In light of this conclusion, the Court need not address Plaintiff's second argument. *Freese v. Astrue*, No. 8:06-cv-1839-T-EAJ, 2008 WL 1777722, *3 (M.D. Fla. Apr. 18, 2008) (citing *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1991)); *see also Demenech v. Sec'y of the Dep't of Health & Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam).

Accordingly, it is **ORDERED**:

1.  The Commissioner's decision is **REVERSED** pursuant to sentence

---

[7](...continued)
reciprocity, verbal and nonverbal communication, restricted repertoire of activities and interests, limited peer relationships, and repetitive and stereotyped patterns of behavior. It is very difficult to have a meaningful, insightful conversation with this young man, as he tends to process most language from a very concrete, uninsightful point of view. . . . This man has essentially no ongoing, quality social contact, and has significant difficulties formulating and maintaining real social relationships." (Tr. 322.) He noted that Plaintiff was in need of ongoing reminders and "frequent explanations of things," exhibited very limited insight, and would have difficulty following directions and with sustained focus and concentration. (Tr. 318-19, 321, 323.)

In addition, the vocational evaluator, Mr. Grissinger, opined that Plaintiff was "limited in job opportunity as well as many aspects of self-care, physically, financially and socially as well as living independence." (Tr. 310.) He added that Plaintiff was "socially inept for his age," he exhibited "very poor intuitiveness, poor insight in social situations, [and] poor judgment," he had "very limited ability to react appropriately to his immediate environment," he could not be expected to ride the city bus by himself because his social immaturity could cause safety issues, he would have difficulty remaining on-task, and he might, from time to time, be unmotivated to attend work. (Tr. 309, 315.) The hearing testimony similarly demonstrated that Plaintiff had difficulty using cash or a debit card, needed reminders for personal care, was unable to tie his shoes or pick his clothes. (Tr. 64-65, 68, 70.)

four of 42 U.S.C. § 405(g) and **REMANDED** with instructions to the ALJ to re-evaluate Plaintiff's intellectual disability under Listing 12.05(C) and conduct any further proceedings deemed appropriate.

2. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3. In the event that benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012). This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** at Jacksonville, Florida, on August 24, 2018.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

13